UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARLES PITTS,

      Plaintiff,

v.                                          CASE NO. 8:07-CV-2246-T-MAP

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.
_____/

## **ORDER**

Pursuant to 42 U.S.C. § 405(g), the Plaintiff seeks review of the Commissioner's decision denying his disability insurance benefits ("DIB") and period of disability benefits.[1] Essentially, Plaintiff argues the Administrative Law Judge ("ALJ") erred by 1) failing to give proper weight to the opinions of his treating and examining physicians; 2) rejecting his complaints regarding nonexertional impairments; 3) failing to abide by the Appeals Counsel's remand instructions. After considering the record, I agree and remand the case for further administrative proceedings consistent with this Order.

*Background*

Plaintiff, who is forty-eight years old and has an eighth grade education and work experience as a truck driver and laborer, alleges he became disabled on January 16, 2002, due to severe back pain requiring surgery in September 2002 and again in April 2003, and psychiatric problems. He was insured for disability benefits purposes through September 30, 2005, requiring he prove disability entitlement on or before that date. Plaintiff filed his application for benefits on August

---

[1] The parties have consented to proceed before me pursuant to 28 U.S.C. § 636(c) (doc. 15).

4, 2004, and on July 11, 2006, the ALJ issued a decision denying him benefits (R. 45). However, the Appeals Council remanded for further proceedings, finding the ALJ's decision insufficient regarding evaluating the medical source opinions, the Plaintiff's credibility, and the Plaintiff's mental impairments, and in explaining whether Plaintiff's limitations and education prevent him from performing the jobs identified by the vocational expert. Upon remand, the ALJ held a hearing and concluded that he was not disabled and could perform a reduced range of sedentary work. The Appeals Council denied review and the Plaintiff filed an appeal to this Court. The case is now ripe for review.

*Standard of Review*

To be entitled to disability insurance benefits, a claimant must be unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful

2

activity; (2) whether the claimant has a severe impairment(s) (i.e., one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his age, education, and work experience. 20 C.F.R. § 404.1520. A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert,* 482 U.S. 137 (1987); 20 C.F.R. § 404.1520(f).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389 (1971). The ALJ's factual findings are conclusive if "substantial evidence" consisting of "relevant evidence as a reasonable person would accept as adequate to support a conclusion" exists. *See* 42 U.S.C. § 405(g); *Keeton v. Department of Health and Human Services*, 21 F.3d 1064 (11th Cir. 1994). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Further, the Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he/she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066; *Jamison v. Bowen*, 814 F.2d 585 (11th Cir. 1987) (remand for clarification).

*Discussion*

    *1. treating and examining physicians*

Plaintiff contends that the ALJ erred in evaluating the opinions of his treating physicians. The law of this circuit requires that the testimony of a treating physician be given substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Commissioner's regulations dictate a similar preference:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

20 CFR § 404.1527(d)(2). When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion, i.e., "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that opinion is given; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist; if it is, it will be accorded greater weight; and (5) other relevant but unspecified factors. 20 C.F.R. § 404.1527(d)(2). An ALJ may reject the opinion of any physician when the evidence, as a whole, supports a contrary conclusion. *Bloodsworth*, 703 F.2d at 1240 (citing *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981)).

Here, the ALJ assigned great weight to a particular note written by Plaintiff's treating doctor, Dr. Broom. Plaintiff maintains that the ALJ's reliance on Dr. Broom's statements from July 22,

4

2003 were misplaced, as Dr. Broom's subsequent notes contradicted the June 23 note. I agree. The July 22, 2003 note indicates Plaintiff was experiencing "very acute pain in his back" and had an appointment with a pain management doctor later that day. The note states:

> We would allow him off work the rest of the week, but once this episode has settled down and he has his pain medications by Dr. Girales, I would expect him to return to work with the limit of 4-hour workdays. He will remain out of work until, 7/28/03, and then he can return with restrictions to avoid lifting over 10 pounds, prolonged sitting, prolonged standing and walking, repetitive bending, twisting, break every half-hour to hour and limit work to 4 hours per day. (R. 319).

Thereafter, however, on August 1, 2003, the Plaintiff reported to Dr. Broom that he was "in excruciating pain," "unable to go on," "unable to work," and "is willing to quit working regardless of what work comp pays him, because he is in such discomfort." Dr. Broom opined that Plaintiff could continue to work within his restrictions, and advised Plaintiff should avoid prolonged standing, walking, and sitting. He also advised Plaintiff should avoid repetitive bending, twisting, and lifting over ten pounds, allowed breaks every hour, and limited to a hour-hour workday (R. 318). Similarly, on September 18, 2003, Dr. Broom again instructed that Plaintiff should be allowed a maximum four-hour workday (R. 317). On October 16, 2003, Dr. Broom indicated that Plaintiff had attained MMI with a 16% disability rating, and opined that he had permanent limitations to avoid repetitive bending, twisting, lifting over ten pounds, and avoid prolonged walking and standing (R. 316). On January 14, 2004, Plaintiff reported to Dr. Broom that he was working but limited to twelve hours a week due to pain and increased stress (R. 315). Dr. Broom advised Plaintiff to remain out of work until he gets his psychosocial issues under control. Because the treating doctor's notes demonstrate that Plaintiff had continued chronic pain and was unable to work a full work day, I find the ALJ erred in assigning great weight to Dr. Broom's single note in the summer of 2003concerning Plaintiff's work limitations. Although the medical evidence from Dr. Broom does

not include any statements concerning limitations imposed on Plaintiff, it is clear from his office notes that Plaintiff could not work more than twelve hours a week due to chronic pain from at least the summer of 2003 (and probably prior to that date due to Plaintiff's back surgeries in September 2002 and April 2003) through January 2004. It is also clear from Dr. Broom's notes that Plaintiff suffered from major depression in January 2004, and Dr. Broom instructed Plaintiff not to work at that time. Even though Dr. Broom is not a mental health doctor, his opinions are persuasive as they are consistent with the other medical evidence from that time period. Dr. Broom served as Plaintiff's treating doctor from at least April 22, 2003 through January 14, 2004, and his records provide a longitudinal assessment of Plaintiff's pain and his limitations.[2]

I find that the records of other treating doctors are consistent with Dr. Broom's assessments. Dr. Barsa, Plaintiff's pain management doctor from January 15, 2004, through October 7, 2005, consistently described Plaintiff as suffering from "intractable" and "chronic" pain (R. 355-374). Dr.

---

[3] On March 10, 2005, Dr. Violet Stone completed a physical residual functional capacity assessment, opining that Plaintiff is capable of performing light work, however from Dr. Stone's written comments on the evaluation form, it seems she relied in part upon Plaintiff's treating doctor's opinion that Plaintiff could return to light work in June 2003. For the reasons explained above concerning Dr. Broom's June 2003, I find Dr. Stone's assessment equally unreliable. Dr. Broom's treatment records demonstrate that Plaintiff's chronic, intractable pain continued after June/ July 2003, and that he was capable of working only twelve hours per week by January 2004. Dr. Barsa indicated Plaintiff's pain continued into 2005, and his diagnosis of lumbar post-laminectomy syndrome characterizes Plaintiff's problems. Post laminectomy syndrome occurs when a patient continues to experience pain following laminectomy surgery (removal of a piece of bone, the lamina, in the spine). Laminectomy is done when the disc material bulges out of its normal space, and the bulge or herniation presses against the spinal cord or spinal nerves. The pressure on a nerve can cause painful symptoms down the leg called sciatica. Usually, removal of the lamina takes the pressure off the nerve root, however if the operation does not work, the patient still has sciatica. There may be numbness and tingling, even muscle weakness. When a group of symptoms occur together, it's called a syndrome. *See http://www.eorthopod.com/public/patient_education/1991/what_is_a_postlaminectomy_syndrome.html.*

Barsa diagnosed chronic intractable low back pain with left lower extremity radiculopathy, status post laminectomy operation with back fusion at four levels, epidural fibrosis and adhesions per MRI, depression with suicidal thoughts, and history of panic attacks. At the initial evaluation Dr. Barsa opined, "I believe that at this point the patient should be placed off-work and agree with Dr. Broom and therefore the patient needs to see the psychiatrist as soon as possible (R. 374). Dr. Barsa did not include any subsequent opinions about Plaintiff's limitations in his records.

Although the medical evidence from 2005 to 2006 documents primarily Plaintiff's mental health, not his back pain, it is clear from the medical evidence as a whole, including the mental health records, that his intractable pain continued. Dr. Ranon, treated Plaintiff from January 17, 2007, through March 15, 2007, and his records substantiate the complaints and limitations Plaintiff suffered from in earlier years. I agree with the Plaintiff that the ALJ improperly discredited the opinions of treating Dr. Ranon. The ALJ opined that Dr. Ranon's opinions were not supported by the medical evidence as a whole (R. 25), but my review reveals that Dr. Ranon's opinions in fact are consistent with the other treating doctors' assessments. Hence, I find the ALJ erred in giving little weight to Dr. Ranon's opinions. Although Dr. Ranon treated Plaintiff after the Plaintiff's last date of insured status, I find his treatment records show Plaintiff's continued disability and are consistent with Drs. Broom and Barsa's records. Dr. Ranon opined that Plaintiff cannot lift more than 7.5 pounds, can stand or walk less than 2 hours per workday, and can sit less than six hours in a workday (R. 520). These opinions are consistent with Dr. Ranon's treatment notes indicating progressive leg pain and weakness, chronic lumbar back pain and stenosis (R. 547-555).

The Plaintiff also alleges the ALJ failed to assign proper weight to the treating and examining mental health professionals' opinions, and this may be true too. However, I will address

7

Plaintiff's assertions concerning the mental health evidence in section two below.

## 2. *nonexertional impairments/ Appeals Council's remand order*

In assessing Plaintiff's credibility, the Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. § 404.1529. "Objective evidence" means medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. § 404.1528. "Other evidence," as that term is used here, includes evidence from medical sources, medical history, and statements about treatment the claimant has received. *See* 20 C.F.R. § 404.1512(b)(2)-(6). SSR 96-7p, promulgated to clarify the requirements of 20 CFR § 404.1529, requires the ALJ to carefully consider subjective symptoms with the rest of the relevant evidence in the record in reaching a conclusion about a claimant's credibility. The ruling requires the ALJ to "consider the entire record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." Importantly, the ruling states:

> It is in "not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible. It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

The Eleventh Circuit pain standard incorporates this scheme by requiring: (1) evidence of an underlying medical condition and either (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (b) that the objectively determined medical

condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Foote v. Chater,* 67 F.3d 1553, 1560-61 (11th Cir. 1995); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). While commonly called the "pain standard," this test applies to all subjective symptoms, including fatigue and memory loss. *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991); 20 CFR § 401.1529.

It is necessary to assess the Plaintiff's subjective complaints of pain, panic attacks, and depression in light of the objective medical evidence and other record evidence. *See* 20 C.F.R. § 404.1529; SSR 96-7p. Here, the Plaintiff's treating doctors all consistently note that he is in "intractable" "chronic" pain after two failed back surgeries. All note Plaintiff's depression too. His pain caused inability to sleep, and an inability to eat. He has suffered tremendous weight loss- his weight was documented as 185 in October 2005 (R. 355), and in January 2007 he weighed 124 (R. 548). While the cause of this drastic weight loss is unknown, at the hearing the Plaintiff testified that he is nauseous and has no appetite due to his pain level (R. 571-72). Because the objective medical evidence and other record evidence support the Plaintiff's subjective complaints, I find the ALJ improperly discounted his complaints and the treating physicians' records documenting the complaints over the years. The Appeals Council gave clear instructions that the ALJ on remand was supposed to "evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 404.1529) and Social Security Ruling 96-7p" (R. 93). Despite the Appeal Council's clear directive to give further consideration to Plaintiff's subjective complaints, the ALJ barely discussed Plaintiff's pain complaints. In his decision, the ALJ states only that "the claimant has mild limitations of daily living, moderate limitations in social functioning, moderate limitations in concentration, persistence,

and pace and no episodes of decompensation. In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned considered the opinion evidence in accordance with the requirements of 20CFR 404.1527 and SSRs 96-2p, 96-5p, and 96-6p" (R. 26). Such brevity is inadequate. *See* 20 CFR § 404.1529, SSR 96-7p.

Plaintiff also claims the ALJ erred in evaluating his mental health, and ignored the Appeals Council's instructions to obtain additional evidence concerning Plaintiff's mental impairments. On remand, the ALJ should clearly evaluate the Plaintiff's alleged mental health impairments. The ALJ states he "adopts" Dr. Foreman's assessment from 2004, but fails to address the fact that Plaintiff's mental status seems to deteriorate thereafter. The ALJ's decision summarizes the records at length (R. 21-25), but contains no discussion of the Plaintiff's claims of panic attacks, intense depression, history of sexual abuse, crying spells, agoraphobia, and suicidal ideations. Additionally, the ALJ opines Plaintiff suffers from an "affective disorder" (R. 29, finding 3), but does not discuss the limitations caused by this disorder, in light of the medical evidence. The ALJ also failed to discuss the combined effect of Plaintiff's physical and mental limitations.

*Conclusion*

For the reasons stated, it is hereby

ORDERED:

1. That judgment is entered for Plaintiff.
2. The case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings for the reasons set forth herein.

IT IS SO ORDERED in chambers at Tampa, Florida on this 12th day of March, 2009.

_/ s / Mark A. Pizzo_
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE